NOT DESIGNATED FOR PUBLICATION

No. 128,807

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALEXANDRIA MEGAN HOUK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; BENJAMIN J. SEXTON, judge. Oral argument held April 14, 2026. Opinion filed July 31, 2026. Affirmed.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and ATCHESON, JJ.

PER CURIAM:  Defendant Alexandria Megan Houk contends the Dickinson County District Court erred in denying her motion to suppress methamphetamine an Abilene police officer discovered in her jacket during a traffic stop. Houk argues that the officer impermissibly relied on information he obtained from the National Crime Information Center (NCIC) because the database is intrinsically unreliable and because the information amounted to inadmissible hearsay. Based on the trial record, neither point warrants relief. We, therefore, affirm the district court's ruling, leaving Houk's conviction and sentence intact since she has raised no other issues on appeal.

1

We necessarily focus on Houk's motion to suppress and the district court's evidentiary hearing on the motion. Abilene police officer Grant Pratt was the only witness to testify at the hearing. Pratt explained that around 8 p.m. on a Thursday in late May 2024, he was "randomly" running license tags of motor vehicles parked at a convenience store through NCIC. NCIC is a national database maintained by the FBI that law enforcement officers and other government agents may access for investigatory purposes.

Pratt testified that he got a response from NCIC indicating that the tag on Houk's car had been withdrawn. And the database associated the car with Houk. Pratt then ran Houk's name through NCIC, and the response showed that her driver's license had been suspended. Pratt testified that he parked his patrol vehicle at the edge of the parking lot and waited for Houk to come out of the convenience store. As she did, Pratt identified her based on previous contacts with her and on her driver's license photo he accessed on his in-car computer.

After Houk got in her car and began to drive away, Pratt followed and pulled her over. He arrested her for driving with a suspended license. Under K.S.A. 8-262(a)(1), driving while suspended is a class B misdemeanor and an arrestable offense. Pratt then searched Houk incident to the arrest and found a pipe with methamphetamine residue in her jacket pocket.

The State charged Houk with possession of methamphetamine, a felony; possession of paraphernalia, a misdemeanor; and traffic offenses for driving while suspended and without a current tag. Houk filed a motion to suppress the evidence from the traffic stop as a violation of the Fourth Amendment to the United States Constitution,

prohibiting government agents from conducting unreasonable searches and seizures. The motion principally asserted Pratt did not have time to access NCIC before he stopped her and, therefore, had no reasonable basis to do so. The motion secondarily asserted that any information Pratt may have obtained from NCIC amounted to hearsay and, therefore, could not support the stop.

At the suppression hearing, Houk's appointed lawyer apparently intended to offer as evidence a video that purportedly would demonstrate that Pratt did not have enough time to have accessed NCIC or any other computer-based information before he stopped Houk. But the lawyer could not find the video among the materials he had stored on his computer, so no such evidence was admitted in support of the motion to suppress. When Pratt testified about the information he obtained from NCIC, the lawyer objected on hearsay grounds and requested and received a continuing objection to that evidence. The district court overruled the objection, finding the NCIC information was not being offered for the truth of the matters asserted in the data entries but to explain the legal basis for Pratt's reasonable suspicion for stopping Houk's car.

Pertinent to this appeal, Pratt testified that he completed a course and examination on the use of NCIC as part of his law enforcement training, a requirement for certification to access the database, and has periodically requalified. He also said that in his four years on the Abilene police force, he used NCIC every day. Pratt testified that he was unaware of any instance during that time in which he received inaccurate information from NCIC. At the suppression hearing, Houk offered no independent evidence on the reliability or accuracy of NCIC as a data repository.

Houk waived her right to a jury trial, and the State dismissed the paraphernalia and traffic charges. In a bench trial on stipulated facts, the district court found Houk guilty of possession of methamphetamine. The district court later sentenced Houk to 17 months in

prison and to postrelease supervision for 12 months and placed her on probation for 12 months, reflecting a presumptive guidelines sentence. Houk has appealed.

ANALYSIS

On appeal, Houk reiterates her hearsay argument and further submits that NCIC is not sufficiently reliable to furnish reasonable suspicion for a traffic stop. She does not independently challenge the legal basis for her arrest, i.e., that she was driving with a suspended license, or the propriety of the search after her arrest. A traffic stop is a seizure under the Fourth Amendment and must be based on a government agent's reasonable suspicion that an infraction has occurred, is occurring, or is about to occur. *State v. Yeargin-Charles*, 321 Kan. 271, Syl. ¶ 2, 577 P.3d 542 (2025). A reasonable suspicion requires an objective belief based on articulable facts rather than mere hunches or guesses and is something less than probable cause. 321 Kan. 271, Syl. ¶¶ 3-4.

On a motion to suppress, the State bears the burden of proving the constitutional sufficiency of a search or seizure by a preponderance of the evidence. In reviewing a ruling on a motion to suppress, an appellate court applies a bifurcated standard first requiring that a district court's factual findings be supported by substantial competent evidence. If so, the reviewing court then makes an independent determination whether those findings warrant the district court's legal conclusion. The appellate court does not reweigh the evidence. *Yeargin-Charles*, 321 Kan. at 274-75.

In this case, neither appellate lawyer represented her respective client in the district court and thus played no part in developing the record there. We do not read that record as directly (or even obliquely) addressing the intrinsic reliability of NCIC as a distinct issue. But we exercise our prudential authority to consider the point in light of the record before us.

4

On appeal, the parties give short shrift to two basic principles governing motions to suppress evidence on Fourth Amendment grounds. First, the issue is whether one or more government agents violated the defendant's Fourth Amendment rights and whether the violation requires that evidence obtained as a result not be admitted at trial. As we have outlined, the State must establish reasonable suspicion for an investigatory stop or probable cause for an arrest to satisfy the Fourth Amendment's protections. The defendant's guilt or innocence is irrelevant to the constitutional issue.

A suppression hearing focuses on the agent's reasonable suspicion in the case of a disputed traffic stop or probable cause in the case of a disputed arrest. In that context, the sources of the agent's belief that they had reasonable suspicion or probable cause are not being offered for the truth of the underlying representations but to establish what the agent relied on. That's different from the State offering evidence, say an NCIC printout, at trial as substantive proof of an element of the charged crime. In that context, the NCIC printout would be hearsay, and the State would have to lay a proper foundation to show it fit within a hearsay exception, such as for business records. See K.S.A. 60-460(m) (business records exception). The United States Supreme Court has drawn that distinction between hearings on motions to suppress and trials. *Draper v. United States*, 358 U.S. 307, 311-12, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959).

Second, the courts recognize that government agents may rely on hearsay in forming a reasonable suspicion for a traffic or *Terry* stop or probable cause for an arrest. That is, the Fourth Amendment permits use of hearsay information as a basis for a constitutionally reasonable search or seizure, provided the hearsay has some indicia of reliability. See *Illinois v. Gates*, 462 U.S. 213, 244-45, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (hearsay with indicia of reliability may support probable cause for search warrant); *Adams v. Williams*, 407 U.S. 143, 146-47, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972) (police officer properly relied on known informant's tip to make *Terry* stop); *Draper*, 358 U.S. at 311; *State v. Hicks*, 282 Kan. 599, Syl. ¶ 1, 147 P.3d 1076 (2006)

5

(affidavit for search warrant may rely on hearsay to support probable cause); *City of Dodge City v. Norton*, 262 Kan. 199, 203-04, 936 P.2d 1356 (1997) (probable cause "'may be predicated in part upon hearsay information'") (quoting *State v. Clark*, 218 Kan. 726, 731, 544 P.2d 1372 [1976]). This principle underlies the use of informants and anonymous tipsters. Here, we have NCIC rather than an informant, but the principle applies in the same way. And the only pertinent evidence presented at the suppression hearing—Pratt's testimony—showed NCIC to be reasonably reliable.

Those settled rules undermine the hearsay argument Houk has recycled from the district court. Based on the record, Pratt appropriately relied on the information from NCIC to form a reasonable suspicion that Houk's driver's license had been suspended, giving him constitutionally sufficient grounds to make the traffic stop.

Given the record evidence, those principles also undercut Houk's argument that NCIC is intrinsically unreliable. She tries to characterize her assertion as a question of law that can be decided in a factual vacuum. While a determination that NCIC is a systemically unreliable source for the information maintained there for Fourth Amendment purposes would be a legal conclusion, neither an appellate court nor a trial court could come to that conclusion without an appropriate factual predicate anchored in the record. Here, as we have said, there is no such anchor; the record evidence is to the contrary.

On appeal, Houk cites inapposite case authority from Mississippi and Tennessee to suggest NCIC is unreliable. Even assuming caselaw could substitute for the lack of factual support in the record, the decisions she relies on do not do the work she attributes to them.

In the Mississippi case, a prosecution witness offered an NCIC printout at Defendant's trial to establish the ownership of several motor vehicles that were broken

into in a motel parking lot—bearing directly on an element of the burglary charges. Defendant objected. The appellate court reviewed what the parties argued as a hearsay objection and found that the State had offered no witness testimony or other evidence establishing that the printout came within Mississippi's hearsay exception for business records. The printout, therefore, should not have been admitted as trial evidence. *Harveston v. State*, 798 So. 2d 638, 641 (Miss. Ct. App. 2001). The result in *Harveston* is unremarkable, but it says nothing about the general reliability of NCIC or the use of information from NCIC to support an investigatory stop or an arrest.

The Tennessee Supreme Court's decision in *State v. Buck*, 670 S.W.2d 600 (Tenn. 1984), is arguably closer to the mark but still unhelpful to Houk. In a capital murder trial, the prosecution offered an uncertified NCIC printout (essentially a rap sheet) to show the defendant's criminal history to satisfy an aggravating factor permitting the jury to impose the death penalty. The sponsoring witness was an agent with the Tennessee Bureau of Investigation who was allowed to read the printout for the jury's consideration during the penalty phase of the case. Only one of the listed convictions appeared to qualify as an aggravator, at least based on the information in the printout. The court found the use of the printout to be error and remarked without citation to any extrinsic source that NCIC entries are "pure hearsay" and "of a dubious degree of accuracy." 670 S.W.2d at 607. The court relied on the use of the printout, among other errors in the penalty phase, to reverse the imposition of the death penalty, while affirming the underlying conviction. 670 S.W.2d at 609, 611.

In its brief to us, the State points out that the Tennessee Court of Appeals has since recognized that law enforcement officers may use NCIC information to support reasonable suspicion and probable cause determinations to stop or arrest suspects. *State v. Rhymer*, 915 S.W.2d 465, 467-68 (Tenn. Crim. App. 1995). The court distinguished *Buck* because the NCIC information was presented there as substantive evidence at trial bearing on the punishment to be imposed in a capital murder case and not in a

suppression hearing to establish a government agent's basis for making an investigatory traffic stop or an arrest.

In sum, Houk has failed to marshal an argument grounded in the evidentiary record that NCIC is inherently unreliable and that law enforcement officers cannot rely on the information maintained there in determining whether they have reasonable suspicion for a traffic stop.

Affirmed.